UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

TERESA BRADY
RUBY GEORGE

Case No. 3:24-cr-251-MMH-MCR
Ct. 1: 18 U.S.C. § 1349
Cts. 2-9: 18 U.S.C. §§ 1343 & 2
Cts. 10-12: 18 U.S.C. §§ 1341 & 2
Cts. 13-14: 18 U.S.C. § 1957

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
(Conspiracy to Commit Wire and Mail Fraud)

At all times material to this Indictment,

### General Allegations

1. The defendant TERESA BRADY was a resident of Jacksonville, Florida. From in or about 1999 to October 2023, TERESA BRADY was the President of Duval Teachers United (DTU), a labor union that represents Duval County Public Schools (DCPS) teachers, paraprofessionals, and office personnel.

2. The defendant RUBY GEORGE was a resident of Jacksonville, Florida. From in or about 1999 to September 2023, RUBY GEORGE was the Executive Vice President of DTU.

3. DTU began in 1974 when predecessor groups joined together to represent the interests of teachers in Duval County, Florida. In 1975, the school

district's paraprofessionals voted to join DTU. In 1985, the school district's office employees and personnel voted to join DTU.

4. DTU is composed of three chapters: the Teacher Chapter, the Paraprofessional Chapter, and the United Office Personnel of Duval Chapter. These three chapters and approximately two-thirds of the employees of the Duval County School Board compose the DTU.

5. Presently, DTU maintains affiliations with the Florida Education Association, National Education Association, American Federation of Teachers, and the American Federation of Labor and Congress of Industrial Organization.

6. Presently, DTU has approximately 6,500 members and represents approximately eighty percent (80%) of eligible DCPS employees. DTU's annual revenue is approximately $5 million, which is comprised of funds paid by dues-paying members.

7. In addition to the President and Executive Vice President positions, DTU has six other paid positions, including two attorneys, three staff consultants, and a receptionist.

8. DTU has a volunteer Secretary/Treasurer position that is held by a Board Member.

9. DTU has a Board of Directors ("Board") of approximately twenty-six members, which is comprised of DCPS teachers, paraprofessionals, and office personnel. The Board Members are volunteers. The Board normally meets once per month.

10. DTU was and remains governed by a set of Bylaws, which sets forth, among other things, the executive compensation of the President and Executive Vice President. The compensation of the President was based on the highest step of the 10-month teacher contract, extended for two additional months, plus a presidential supplement of $5,000. The Executive Vice President's salary was ninety percent (90%) of the compensation of the President.

11. DTU employees, including the President and Executive Vice President, accrued forty-two (42) leave days per year, which could be rolled into future years with no cap.

12. There was no cap on the amount of accrued leave that DTU employees could sell back to DTU at a rate equivalent to their hourly pay.

13. DTU's payroll, including the deposit of the unaccrued and unearned leave that TERESA BRADY and RUBY GEORGE authorized for each other, was typically funded through the payroll processing company Paychex.

14. DTU was required to register with the Florida Public Employee Relations Commission (PERC). PERC is an independent quasi-judicial agency with the state of Florida that has a primary function of adjudicating and mediating public sector labor and employment disputes. Each year, DTU was required to file with PERC two documents: (1) Employee Organization Registration, and (2) Employee Organization Annual Financial Statement. The Employee Organization Annual Financial Statement required certification of executive compensation for the previous

fiscal year. These documents were required to be signed by DTU's President and Treasurer and notarized.

## The Conspiracy

15. Between in or about 2013 and in or about late 2022, in the Middle District of Florida, and elsewhere,

TERESA BRADY, and<br>
RUBY GEORGE,

the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other to devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud:

(a) to transmit and cause to be transmitted by means of wire communications, in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of 18 U.S.C. § 1343; and

(b) to deposit or cause to be deposited any matter or thing whatever to be sent or delivered by U.S. Mail or any private or commercial interstate carrier, in violation of 18 U.S.C. § 1341.

## Purpose of the Conspiracy

16. The purpose of the conspiracy was for TERESA BRADY and RUBY GEORGE to unlawfully obtain over $1.2 million apiece by selling back to DTU leave that they had not accrued and did not earn. The defendants engaged in the conspiracy

for at least ten years while serving as the President and Executive Vice President of DTU.

## Manner and Means

17. It was part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did hide and conceal their actual leave balances from DTU employees and DTU Board Members so that they could continue to cause DTU to pay them for unaccrued and unearned leave.

18. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did falsely and fraudulently make statements to the DTU Board that they had accumulated leave that they needed to sell back to DTU to avoid the leave being a liability to DTU, when in fact they did not actually have accrued and earned leave remaining to sell back to DTU.

19. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did provide false information to DTU's auditor (a Certified Public Accountant) regarding their leave balances, such that it appeared that both had substantial leave to sell back to DTU, when in fact they did not.

20. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did sign each other's unaccrued and unearned leave buyback checks, such that the Secretary/Treasurer did not see the issued checks.

21. It was further part of the conspiracy that when TERESA BRADY and RUBY GEORGE would and did sign each other's unaccrued and unearned leave buyback checks, the deposit of those checks into their personal accounts caused

electronic clearing of those checks through the interstate banking system, which included DTU's Truist Bank account. TERESA BRADY and RUBY GEORGE also made payment requests through Paychex for unaccrued and unearned leave, which caused electronic transfers of funds for unaccrued and unearned leave from DTU's Truist Bank account to be deposited directly into their respective personal accounts.

22. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE did not include their actual leave balances on DTU pay stubs to conceal the true nature of their leave balances.

23. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did pay each other "bonus" payments without the authorization of the DTU Board, as well as reimbursements for expenses they did not personally incur on behalf of DTU.

24. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did hide and cause to be hidden the scope of their annual unaccrued and unearned leave payouts by having those figures contained in a general line item for salaries and payroll taxes in the annual DTU financial statements.

25. It was further part of the conspiracy that TERESA BRADY and RUBY GEORGE would and did hide and conceal the true nature of their payments of unaccrued and unearned leave, bonus payments, and improper reimbursement payments from public scrutiny (including that of the DTU Board) by filing and causing to be filed false financial statements with the Florida PERC via the United States Mail or private and commercial interstate carrier.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH TWELVE
### (Aiding and Abetting Wire and Mail Fraud)

### Scheme and Artifice

1. The allegations in Paragraphs 1 – 14, and 17 – 25 of Count One are incorporated herein.

### Wire Fraud

2. Between in or about 2013 and in or about late 2022, and specifically on or about the dates listed below, in the Middle District of Florida, and elsewhere,

TERESA BRADY, and
RUBY GEORGE,

the defendants herein, with intent to defraud, aided and abetted and did knowingly and willfully devise and participate in a scheme and artifice to defraud, and for the purpose of obtaining money by means of materially false and fraudulent pretenses, representations, did knowingly transmit, cause to be transmitted, and aid and abet the transmission of, the following writings, signs, signals, pictures, and sounds, by means of wire communication in interstate commerce.

### Execution

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| TWO | February 26, 2020 | Deposit of DTU check number 30776 in the amount of $39,189.08 from the DTU Truist Bank account ending 0325 into Teresa Brady's personal Bank of America account |

| THREE | February 28, 2020 | Deposit of DTU check number 30775 in the amount of $37,887.83 from the DTU Truist Bank account ending 0325 into Ruby George's personal Fifth Third account |
| FOUR | November 20, 2020 | Deposit of DTU check number 31112 in the amount of $26,690.54 from the DTU Truist Bank account ending 0325 into Teresa Brady's personal Bank of America account |
| FIVE | November 20, 2020 | Deposit of DTU check number 31113 in the amount of $24,015.63 from the DTU Truist Bank account ending 0325 into Ruby George's personal Fifth Third account |
| SIX | March 17, 2021 | Direct Deposit from DTU Truist Bank account ending 0325 in the amount of $10,095.84 into Teresa Brady's personal Bank of America account and Community First Credit Union account |
| SEVEN | July 12, 2022 | Deposit of DTU check number 32028 in the amount of $16,209.54 from the DTU Truist Bank account ending 0325 into Teresa Brady's personal Bank of America account |
| EIGHT | July 19, 2022 | Direct Deposit from DTU Truist Bank account ending 0325 in the amount of $13,658.27 into Ruby George's personal Community First Credit Union account |
| NINE | July 20, 2022 | Direct Deposit from DTU Truist Bank account ending 0325 in the amount of $16,209.54 into Teresa Brady's personal Bank of America account and Community First Credit Union account |

All in violation of 18 U.S.C. §§ 1343 and 2.

## Mail Fraud

3. Between in or about 2013 and in or about late 2022, and specifically on or about the dates listed below, in the Middle District of Florida and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises,

TERESA BRADY, and
RUBY GEORGE,

the defendants herein, did knowingly deposit, cause to be deposited, and aid and abet the sending and delivery by U.S. Mail or private and commercial interstate carrier the following matter:

| COUNT | DATE | MAILING |
|---|---|---|
| TEN | July 23, 2020 | Fiscal Year 2019 DTU Financial Statement to Florida PERC |
| ELEVEN | August 9, 2021 | Fiscal Year 2020 DTU Financial Statement to Florida PERC |
| TWELVE | August 15, 2022 | Fiscal Year 2021 DTU Financial Statement to Florida PERC |

All in violation of 18 U.S.C. §§ 1341 and 2.

### COUNTS THIRTEEN AND FOURTEEN
(Illegal Monetary Transactions)

1. As to TERESA BRADY, the allegations in Paragraphs 1 – 14, and 17 – 25 of Count One are incorporated herein, as are the allegations in Paragraphs 1 – 2 of Counts Two through Nine.

2. On or about the dates listed below, in the Middle District of Florida and elsewhere,

TERESA BRADY,

the defendant herein, did knowingly engage and attempt to engage in monetary transactions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, conspiracy to commit wire and mail fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1349, 1343, and 2.

| THIRTEEN | March 1, 2020 | Payment of Teresa Brady's personal American Express credit card in the amount of $30,000 |
|---|---|---|
| FOURTEEN | July 18, 2022 | Payment of Teresa Brady's personal American Express credit card in the amount of $13,981.47 |

All in violation of 18 U.S.C. § 1957.

## FORFEITURE

1. The allegations contained in Counts One through Fourteen, are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. §§ 1343 and/or 1341, in violation of 18 U.S.C. § 1349, or upon a conviction of the violation of 18 U.S.C. §§ 1343 and/or 1341, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4. The property to be forfeited includes, but is not limited to an order of forfeiture for at least $2,600,235.99, which represents the proceeds of the offenses.

5. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL,



ROGER B. HANDBERG
United States Attorney

By: /s/ A. Tysen Duva
A. TYSEN DUVA
Assistant United States Attorney

By: /s/ Kelly S. Milliron
KELLY S. MILLIRON
Assistant United States Attorney

By: /s/ Frank Talbot
FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

FORM OBD-34
12/4/24 Revised

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Jacksonville Division

THE UNITED STATES OF AMERICA

vs.

TERESA BRADY
RUBY GEORGE

INDICTMENT

Violations: 18 U.S.C. § 1349, 18 U.S.C. § 1343 & 2, 18 U.S.C. § 1341 & 2, and 18 U.S.C. § 1957

A true bill, _____

Filed in open court this 12th day

of December, 2024.

_____Angela Jack_____
Clerk

Bail $ _____

GPO 863 525